Jones, J.
To make a case for the reformation of a written contract, it mast be shown that the written instrument does not express the real contract.
This must be shown by clear and entirely satisfactory proof, and the relief will not be granted “whenever the evidence is loose, equivocal, or contradictory, or is in its texture open to doubt or to opposing presumptions” (see remarks of Judge Mokell in Pennell v. Wilson, 2 Robt., 509).
The evidence in this case is not sufficient to make out that the written instruments do not express the real contract.
Again, as an element in the proof to establish that the written contract does not express the true contract, it is necessary to show that by mutual mistake, accident or fraud on the part of the defendant, the writings have failed to express the true agreement; if no such element is shown to exist, the conclusion is irresistible that whatever may have been the original propositions made and accepted, they were altered before the final completion of the contract, and that the agreement concluded on is that which is expressed in the written agreement.
I think the evidence in this case fails to establish that in the instrument in question there is anything omitted, inserted, or changed, by mistake, accident, or fi aud.
The complaint, therefore, must be dismissed, and the judgment go for the defendants on the merits, unless the plaintiffs can have relief upon the contract alleged and insisted on in the answer.
Plaintiffs’ counsel, at the hearing, while insisting and urging that plaintiffs are entitled to have the contract reformed, and specifically performed as reformed, and refusing to abandon that claim and adopt in its place the contract as alleged in the answer, claims that the court should give relief according to that contract *443 which the defendants insist on, but which the plaintiffs have always, and still do, repudiate, and refuse to adopt.
Section 275 of the Code provides that where the complaint is answered, the court may grant the plaintiff any relief consistent with the case made by the complaint, and embraced within the issue.
This is no more than the former equity doctrine, where the complaint contained a general prayer for relief.
Consequently, I have been referred, in support of plaintiff’s proposition, to decisions in equity suits made in the English courts, the courts of the sister States, and of this State, prior to the* adoption of the Code.
I have examined all the cases to which I have been referred, and also others which have come under my notice, and, although one or two of the decisions in the sister States certainly go a great way, yet, taking all the decisions together, they fail to satisfy me that theie is any established principle which would justify so g' eat a departure from the general rule, that the relief grant d must be consistent with the case made by the bill, as granting relief upon the defendants’ answer in this case would be.
The most recent English case I have met with is that of Jeffry v. Stephens (6 Jur. N. S., 947), which was a bill for specific performance, where the learned chancellor, although he declared that the proposition that where the plaintiff brings forward one species of agreement, and the defendant relies on another, the plaintiff may, at the hearing, adopt the agreement which is set up by the defendant,—is borne out by the authorities ; still refused in that case to let in the doctrine, holding that it did not apply to a case where the plaintiff had 'all the way through repudiated the agreement set up by the defendant, and acted as if no such agreement existed. *
It will be observed that the learned judge lays down *444 the doctrine to be that the plaintiff may at the hearing adopt the agreement alleged by the defendant.
By the phrase “may at the hearing adopt,” I understand the learned chancellor to mean that the plaintiff may waive the agreement he has alleged, and accept in lieu thereof that alleged by the defendant; but that he cannot insist on his own agreement, and say to the court, “I insist on this being the agreement, and that the defendant’s alleged agreement is not the agreement, and if you decide against me I do not mean to rest satisfied with that decision ; but I want you to decree in my favor a specific performance of the agreement which he alleges, but which I not only now, but intend all the way through, to insist is not the agreement; so that if I am defeated all the way through, and forced to take his agreement or none at all, then I may have the benefit of that which is forced on me against my constant repudiation of it.”
Ho case is cited by the learned judge in support of the doctrine. I have examined the authorities cited by the counsel for the plaintiff in that case, and have been unable to discover that they support the doctrine. If sustained, it seems to me, it must be on the ground that it ends litigation, since it amounts to this, that both parties coincide in their views as to what the agreement is that is to be performed.
In the present case, the plaintiffs have not adopted the agreement alleged by the defendants in their answer ; so far from this, they claim that even if the proof does not establish their own version of the agreement, yet it also fails to establish the defendants’, and consequently they want:
First. Their own agreement.
Second. If the proof does not entitle them to that, then an agreement according to the proof; and
Third. If neither ol these two things can be done, then the agreement alleged by the defendants ; and this last he desires to obtain, not by adoption, but by a decision *445 of the court, which he may attack and endeavor to overturn.
I have found no principle which entitles him to this.
The cases cited by the plaintiffs’ counsel in the case of Jeffry y. Stephens, do, however, sustain the doctrine, that where, in a bill filed to compel the specific performance of an agreement, the statement of the agreement is substantially correct, the bill will not be dismissed merely because it states a covenant which is not established by the proof, or omits some covenant favorable to the defendant, which is set up in the answer and established by the proof. Among the cases thus cited is Mortimer v. Orchard (2 Vesey Jr., 243), which seems to have been the first case where, although a plaintiff failed to prove the agreement as alleged by him, yet the court gave him a decree for the specific performance of the agreement as alleged by the defendants. In that case the agreement alleged was to renew a lease; the answer admitted an agreement to renew, but different from that set up in the bill. The chancellor said : “In strictness, the bill ought to be dismissed ; but as there had been an execution of some agreement between the parties,” specific performance was decreed according to the answer, with costs against the plaintiff.
The report of the case is loose and unsatisfactory, and the reasoning of the learned judge inconclusive. The extent of the variance between the two agreements does not appear ; and I think it cannot be regarded as going further than the other cases cited by the plaintiff’s counsel in Jeffry y. Stephens.
The doctrine of these cases goes to this extent, and no further, viz : that when a plaintiff files a bill to compel a specific performance, and the agreement as alleged is admitted by the answer with some modifications or variations, or is substantially proved, though the plaintiff has failed to establish the precise terms by him alleged, then the court will look into the answers and proofs, and establish the.terms of the agreement.
In all these cases, the plaintiff having proved there *446 was a parol agreement of the nature of the one he sought to enforce, but failing to establish the precise terms of it as alleged, the court, considering how difficult it is to establish the precise terms of a parol.agreement, by reason of the absence of witnesses, their want of recollection, or misconception of the language of the parties, held that the precise terms of the agreement thus left in doubt, or failed to be established, were subsidiary to the agreement, and it was only necessary to establish them to prevent the agreement from being void for uncertainty ; and consequently held that as the complaint made a case for the specific performance of an agreement to do a particular thing, and as the proof established such an agreement-, the establishment of the precise terms being merely subsidiary thereto, fell within the case made by the bill (Parks v. Taswell, 4 Jur., 186).
The cases in the courts of this State, to which I have been referred, go no further than this.
This doctrine has always been considered anomalous and a departure from established principles (Story Eq. Pl., § 503, c; Mortimer v. Orchard, 2 Vesey Jr., 243 ; Rose v. Mynatt, 7 Yerg., 30).
I am unwilling to carry it any further than to the extent to which it has already been engrafted on our system of jurisprudence.
It is true that some few decisions in the courts of our sister States have apparently gone further, and Jr eld that, although the plaintiff fails to establish the case made by his bill in its entire scope and meaning, indeed, failing to prove a single allegation, yet he may .have relief according to the allegations of the answer, without adopting them at the hearing as constituting his case.
If these decisions in fact went to that extent, I should decline to follow them, as they are not binding authority in this- State, and are unsupported either by reasoning or the citation of adjudged cases. But, on an analysis, I think none of them go to that extent, except the case of Baily v. Baily, which appears to have been *447 decided upon a ground, as hereafter shown, not appearing in this case ; the soundness of which it is not ess mtial now to inqu’re into.
One of these cases is that of Reppier v. Buck (5 B. Monr., 96), where the court held “although the complainants allege the deed to be fraudulent, yet they pray for general relief; and the Mil is so drawn that the chancellor under it may, and we think should, decree a distribution according to the provisions of the deed.” The report does not give the bill in extenso, and from the remarks of the court, it is to be gathered that it made a case as well for a distribution under the deed according to its provisions, as for setting aside the deed and a distribution irrespective of its provisions. Whether such a bill would be objectionable as violating the rules of equity pleading, was a question not raised or mooted.
Another case is that of Rose v. Mynaft (7 Yerg., 30). The bill stated a case of fraud, but it also stated that the transaction was one between attorney and client; that the boy Daniel was put in defendant’s possession as indemnity for his being security, and that although defendant had been relieved from his suretyship, still he retained possession of the boy, claiming to hold him absolutely, and the relief prayed for was to recover the boy Daniel. The answer alleged that the boy Daniel was transferred to the defendant absolutely, as compensation for services to be rendered, by him as attorney and counsel for the plaintiff.
The court, alter using the following language : “As a general rule, in a court of equity, as well as in a court of law, the party must recover according to his allegations, if at all. But this rule is not so strictly enforced in equity as at law\ Although this is the general rule, yet there are exceptions,” and referring to the case of Mortimer v. Orchard, in 2 Vesey Jr., 243,—held that such an agreement between attorney and client as that set up in the answer, could not stand ; that the boy was held by defendant simply as collateral security for *448 payment of his reasonable compensation, and, therefore, the answer presented no defense tó the plaintiff’s claim for a re-delivery of the boy, but that the plaintiff ought to pay the defendant the amount of his reasonable compensation before taking the boy; the court therefore fixed the reasonable compensation at fifty dollars, and decreed that the boy should be delivered up to the plaintiff on payment of that sum.
As the bill alleged that the boy was placed in the defendant’s hands as security, and sought to have him re-delivered on the ground that the object for which the security had been given was accomplished, the decision seems to have proceeded on the ground that the relief granted came within the case made by the bill, although it alleged a delivery as security upon a special contract far one object, which had been accomplished, and the facts established to the court were that by operation of law he was delivered to and held by the defendant as collateral security for another object, which had not been accomplished. This is carrying the doctrine of bringing, by construction, within the case made by the bill, a case differing from that therein allege;], to Ps utmost verge. Under the peculiar phase of the case, the disposition made of it may. perhaps, be proper and justifiable; but in my view it does not warrant the extension of the doctrine to the case at bar.
Another of the cases is Baily v. Baily (8 Humph., 334), in which case the court did certainly grant to the plaintiff, upon the defendant’s answer, relief clearly nff within the case made by the bill. This, as appears by the opinion of the court, was based on an admission in the answer that the defendant was willing to perform the contract alleged by him, as the court might direct; for the language of the court is “Inasmuch as the defendant William Baily admitted in his answer that he had agreed to convey, in consideration of the deed made to him, a certain tract of land, and that he was willing to convey the same as. the court might direct, *449 the complainant may have a decree vesting him with a title to the same.”
The above doctrine established by the cases relied on by the plaintiff’s counsel in the case of Jeffry v. Stephens, is, in my view, inapplicable to the present case.
The plaintiff here seeks to reform a written agreement ; he sets forth in his complaint that the defendant relies on a written contract, such as he now insists on in his answer ; he then sets forth that that contract does not express the true agreement, and denies that he ever entered into that contract; he then sets forth what he claims the true agreement to be; he then sets forth the circumstances under which he was induced to sign the contract insisted on by the defendant, and claims to have it reformed according to his view of what the true agreement was.
I confess my inability to perceive how this complaint makes a case for the specific performance of the contract alleged in the answer.
The whole complaint is antagonistic to that contract. It strikes at the very root of it, and alleges that agreement was never made. It does not admit that the agreement was made, and then seek to avoid it on the ground that it was fraudulently made.
Nor is a case presented where the proofs show, or the parties concede, that there was an agreement between them of the nature of the one alleged by plaintiff, and the only dispute is as to what the terms of that agreement are. For here the plaintiff claims there was to be simply a mortgage of the lease, while the defendant claims there was to be an absolute assignment of the lease, with an agreement to, re-assign a poition in a certain event. The two claims are totally inconsistent. Neither partakes of the nature of the other.
Nor does the defendant come into court, and by his answer submit to the discretion of the court whether to decree performance of the contract alleged by him or not.
*450 I am unable to perceive any principle upon which these plaintiffs, having wholly failed to establish their case, can in this action, despite the objection of the defendants, obtain that which they have never requested from defendants, and for which they did not institute this action, and which they still refuse, and will continue to refuse, to take, unless the court, by denying them anything else, compels them to accept it.
With respect to the alleged partnership, I think it is unsnstained by the proof.
With respect to the transaction between Cregan, Delafield and Livingston, relative to the payment, as they express it, of a sum equal to the back rent, taxes, &c., I think it does not amount to, and cannot be regarded as, a redemption, so far as plaintiffs are concerned. As between the party paying and the party recovering, the question whether the payment operates as a redemption, depends on the intent of the parties ; if they did not intend it to be a redemption, the bare fact that the sum paid equalled the amount which it would be necessary to pay to redeem, would not make such payment a redemption. In this case it clearly was not intended by either Cregan, or Delafield, or Livingston, that there should be any redemption. As to whether the transaction would be held to amount to a redemption as respects third persons, would depend on whether it was a fraudulent contrivance to prevent those who would be entitled to redeem from exercising that right; if it was, and the landlord participated in the fraud, it would probably be held that the old lease was redeemed, and the new one of no effect as regards a person injured by the fraud ; but if the landlord did not participate, then the new lease would probably be-deemed as substituted in place of the old ; if it was not a fraudulent contrivance, then as the right of all parties entitled to come in and redeem in the statute time, was not affected by the transaction, there would be no principle on which to hold that, contrary to the intention of the parties to the transaction, it amounted to a *451 redemption in' favor of those who, hy their own neglect, failed to exercise their right of redemption.
In this case, the transaction was not a fraudulent contrivance on the part of any one, so far as the plaintiff is concerned. The evidence clearly shows that Mi'. Board man (who is, in reality, the party interested, his wife simply holding the legal title for him) never designed that the premises should be redeemed ; and he knew that the lessors would do nothing to facilitate a redemption; and the circumstances, indicia, and evidence in the case clearly establish to my mind that Mr. Boardmau well knew of the tratisaction between Cregan, Livingston and Delafield, and that it was not intended by them to operate as a redemption.
■ Upon a full review of the whole case, I think the complaint. must be dismissed on the merits as to all the defendants, with costs.
One bill of costs to defendants Davidson and Brewer, and a separate one to defendants Livingstons.
Let ihe defendants prepare,such findings of fact and law as they deem the above opinion, proofs, and pleadings call for, and.let the plaintiffs prepare such findings of fact and law as they desire to request me to find; and each submit to me their proposed findings, and I will settle them.